# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

FILED

OCT 0 1 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

THE PERSON OF ANDREW WORRALL AND THE SEARCH OF ANY BAGS AND
CONTAINERS BELONGING TO WORRALL AND WITHIN HIS IMMEDIATE POSSESSION
FOR CELLULAR TELEPHONES AND ELECTRONIC DEVICES, AND THE SEARCH OF
THOSE CELLULAR TELEPHONES AND ELECTRONIC DEVICES, MORE FULLY
DESCRIBED IN ATTACHMENT A

)
)
)
)
)
)
)

Case No. 3:25-MJ- 1290

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached hereto and incorporated herein.

located in the _____ Eastern _____ District of _____ Tennessee _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422 | Coercion and Enticement |
| 18 U.S.C. § 2252A(a)(2) | Receipt and Distribution of CP |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession with Access to View CP |

The application is based on these facts:

Please see the affidavit of DOE-OIG Special Agent Paul B. Gilbride, which is attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Paul B. Gilbride, DOE-OIG Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 10/01/2025 _____

*Judge's signature*

City and state: Knoxville, Tennessee _____

Hon. Debra C. Poplin, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF PERSON AND ELECTRONICS TO BE SEARCHED

The person of Andrew Worrall, SUBJECT PERSON, (date of birth: October 13, 1969; Social Security Number 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), and any bags and/or other containers belonging to Worrall and within his immediate possession, when Worrall is present within the Eastern District of Tennessee, for cellular telephones and electronic devices, to seize the devices found during the authorized search of Worrall and, thereafter, to search those cellular telephones and electronic devices for the records and information described in **Attachment B**.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

1.      All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to:

   a. any computer, computer system, storage media and related peripherals; any electronic and/or digital data storage devices, including but not limited to, hardware, software, flash memory devices, cellular telephones, tablets, and other storage mediums.

2.      Information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, including, but not limited to:

   a. electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and,

   b records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

3. For any computer or storage medium to include cell phones whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant, evidence of who used, owned, or controlled the computer or storage medium at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; for the purpose of determining ownership and/or control other said items.

4. In order to search for the items described above that may be maintained in electronic media, law enforcement personnel seek authorization to search, copy image and seize the following items for off-site review:

    a. Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

    b. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including encryption devices;

    c. Any magnetic, electronic or optical storage device capable of storing data, such hard disks, smart cards, electronic notebooks, and personal digital assistants;

    d. Any documentation, operating logs and reference manuals regarding the operation of the computer equipment;

    e. Any applications, utility programs, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f.   Any encryption devices, dongles, and similar physical items necessary to gain access to the computer equipment, storage devices or data, but this warrant does not authorize the compulsion of any person to provide a password or code to access the same; and

g.   Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data, but this warrant does not authorize the compulsion of any person to provide a password or code to access the same; and

h.   Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, and router configuration software.

5.   Any and all cameras, film, or other photographic equipment;

6.   Records, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes, books, diaries, and documents regarding purchase or repair;

7.   Records, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use; and

8.   Deeds, titles, bills, invoices, and other indicators of ownership or occupancy of desktop computers, laptop computers, tablets, and other similar devices; documents reflecting names, addresses, and telephone numbers; bank records.

9.   Electronic mail, chat logs, and electronic messages, establishing communication with individuals who have not attained the age of 18 or wherein the suspect believes the individual has not attained the age of 18.   Wherein the correspondence persuades, induces,

entices or coerces any individual who has not attained the age of 18 years to engage in sexual activity.

10.    All visual depictions, including still images, videos, films, audio recordings, or other recordings of communications with individuals who have not attained the age of 18 or wherein the suspect believes the individual has not attained the age of 18.

11.    For any computer or storage medium to include cell phones whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant, evidence of who used, owned, or controlled the computer or storage medium at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; for the purpose of determining ownership and/or control other said items.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

IN THE MATTER OF:

THE SEARCH OF THE PERSON OF ANDREW
WORRALL AND THE SEARCH OF ANY BAGS
AND CONTAINERS BELONGING TO WORRALL
AND WITHIN HIS IMMEDIATE POSSESSION
FOR CELLULAR TELEPHONES AND
ELECTRONIC DEVICES, AND THE SEARCH OF
THOSE CELLULAR TELEPHONES AND
ELECTRONIC DEVICES

CASE NO. 3:25-mj- 1290

**FILED UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Paul B. Gilbride, being duly sworn, hereby depose and state that the following is

true to the best of my information, knowledge, and belief:

### INTRODUCTION AND AGENT BACKROUND

1.     I am a Special Agent with the U.S. Department of the Energy, Office of

Inspector General (DOE-OIG), and have been so since 2013.  Between 2008 and 2013, I was

a special agent with the United States Secret Service.   I hold a Bachelor of Science in

Information Technology and a Master of Science in Telecommunications from George

Mason University in Fairfax, Virginia.   During my law enforcement career, I have

investigated financial fraud, network intrusions, child pornography, extortion, threats against

protected persons, counterfeit currency, credit card fraud, and other electronic crimes.

2.      While acting in my official capacity, I am authorized to investigate violations

of the laws of the United States.  I am currently assigned to the DOE-OIG Cyber

Investigations and Forensics Analysis Unit, where I have previously investigated and/or

participated in investigations of network intrusions, intellectual property theft, mishandling

1

of classified data, threats affecting interstate commerce, child exploitation and child pornography offenses, which included surveillance, executing search warrants, and reviewing digital evidence containing numerous examples of child pornography.

3.      I am also a U.S. Department of Energy - Office of Inspector General, Internet Crimes Against Children (ICAC) Affiliate Task Force member.   As part of my duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A.   I have received training and instruction in the field of investigation of child pornography and have had the opportunity to participate in investigations relating to the sexual exploitation of children.   As part of my training and experience, I have reviewed images depicting child pornography in a variety of formats (such as digital still images and video images) and media (such as digital storage devices, the Internet, and printed images).

4.      I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC), and the United States Secret Service Special Agent Training Course (SATC), where I received specialized training concerning the execution of search warrants involving digital media and the proper handling of evidence.   I have also completed the Department of Homeland Security, Basic Computer Evidence Recovery Training Program (BCERT) and Advanced Computer Evidence Recovery Training Program (ACERT), Homeland Security Investigations (HSI) Victim Identification course, as well as various other training in the area of computer forensics, which included child pornography and child exploitation.

5.      I have probable cause to believe that contraband and evidence of a crime, fruits

2

of a crime, and instrumentalities of violations of the following statutes:

    a.      Coercion and Enticement - 18 U.S. Code § 2422

    b.      Distribution and Receipt of Child Pornography 18 U.S.C. § 2252A(a)(2);

    c.      Possession of or knowingly accessing with the Intent to view Child Pornography - 18 U.S.C. § 2252A(5)(B)

("**TARGET OFFENSES**").

6.     I submit this application and affidavit in support of a search warrant authorizing a search of the person of Andrew Worrall ("**SUBJECT PERSON**"), and any bags or containers belonging to and within the immediate possession of **SUBJECT PERSON**, and for any and all cellular telephones and electronic devices found on and within the immediate possession of **SUBJECT PERSON**, as further described in **Attachment A**, incorporated herein by reference. The **SUBJECT PERSON** is located in the Eastern District of Tennessee.

7.     Located on or within the immediate possession of **SUBJECT PERSON** to be searched, I seek to seize evidence, fruits, and instrumentalities of the **TARGET OFFENSES**. I request authority to search the **SUBJECT PERSON,** including any bags or other containers carried by Worrall, any computer, any computer media, and any communication devices including but not limited to any wireless telephones, located therein where the items specified in **Attachment B** may be found, and to seize all items listed in **Attachment B** as contraband and instrumentalities, fruits, and evidence of crime.

8.     The statements contained in this affidavit are based in part on information provided by law enforcement agents, written reports received about this and other

3

investigations directly or indirectly, from other law enforcement agents, information gathered from the service of state search warrants, the results of physical and electronic surveillance conducted by law enforcement agents, and my experience, training and background.

9. Because this affidavit is being submitted for the limited purpose of obtaining the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts I believe to be necessary to establish probable cause for the issuance of the requested warrant.

## DEFINITIONS

10. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2422 and 18 U.S.C. § 2256 apply to this affidavit and **Attachment B**:

    a. "Computer" refers to any electronic, magnetic, optical, electrochemical, or other high-speed data processing device capable of performing logical or storage functions and includes any data storage facility or communications facility directly related to such a device. As used herein, "computer" also incorporates digital devices that complete these same functions, such as smartphones, tablets, connected devices, and e-readers. See 18 U.S.C. § 1030(e)(l).

    b. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys

4

and locks).

c. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

d. "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider assigns a different unique number to a computer every time it accesses the Internet. IP addresses may also be static, which means the provider assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

e. "Mobile applications" or "mobile apps" are computer programs or software applications specifically designed to run on mobile devices (e.g., smartphones, tablets, e-readers, etc.). Mobile applications are generally downloaded from application distribution platforms operated by specific mobile operating systems, like App Store (Apple mobile devices) or Google Play Store (Android mobile devices).

f. "Instant messaging" is a type of communication that offers real-time text transmission over the Internet. Instant messaging generally involves short messages which are transmitted between two or more parties. Various social networking, dating and gaming websites and mobile applications offer instant messaging for users to communicate amongst themselves. More advanced features of instant messaging include push technology to

provide real-time text, and the ability to send/receive digital files, clickable hyperlinks, and video chat.

g. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, both visually or aurally, and by any means, whether in handmade form (including, but not limited to: writings, drawings, and paintings), photographic form (including, but not limited to: microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, and photocopies), mechanical form (including, but not limited to: phonograph records, printing, or typing), or electrical, electronic, or magnetic form (including, but not limited to: tape recordings, cassettes, compact discs, electronic, or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks or DVD's, Personal Digital Assistants (PDAs), Multimedia Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS, CHILD PORNOGRAPHY, AND CHILD ENTICEMENT

11. Based on my training and experience in child exploitation investigations, I am aware that computers, computer technology, and the Internet significantly facilitate child pornography offenses. Computers generally serve five (5) functions in connection with child exploitation offenses: production, communication, distribution, storage and social networking. Child pornography offenders can transpose photographic images from a camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Therefore, through use of the Internet, electronic contact can be made to literally millions of computers around the world.

6

12. A computer's ability to store images in digital form makes the computer itself an ideal repository for storing images of communications or for storing video, audio, or written descriptions of communications. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown significantly within the last several years. These drives can store thousands of images at very high resolution. In addition, electronic devices such as smartphones (e.g., Apple iPhones, Samsung Galaxy), connected devices (e.g., Apple Watch), e-readers, and tablets (e.g., Apple iPads, Kindle Fire) now function essentially as computers with the same abilities to store images in digital form.

13. The internet affords individuals who commit child enticement and child pornography offenses several different venues for communicating with individuals who have not attained the age of 18, or wherein the suspect believes the individual has not attained the age of 18, in a relatively secure and anonymous fashion. Internet portals such as, but not limited to, Yahoo, Google, WhatsApp, Telegram, and Snapchat allow users to set up an account to facilitate online communications and participate in text, video, and audio conversations.

14. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside on the hard drive in space that is not allocated to an active file for long periods of time before they are overwritten. A computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

15. Additionally, files that have been viewed on the Internet are automatically downloaded into a temporary internet directory or "cache." Browsers typically maintain a

7

fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed internet pages. Therefore, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed, and more on the user's operating system, storage capacity, and computer habits.

## SPECIFICS REGARDING THE SEARCH AND SEIZURE OF COMPUTERS

16. Based on my training and experience, I am aware that the search of computers often requires agents to seize most of the computer items (e.g., hardware, software, and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is essential to the search for electronic evidence because of the following facts:

a. Computer storage devices, like hard drives or flash media, store the equivalent of thousands of pages of information. When the user wants to conceal electronic evidence of a crime, he or she may store it in random order with deceptive file names. This requires searching authorities to examine all of the stored data to determine whether it is included within the scope of the warrant. This process can take weeks or months, depending on the volume of the stored data, and it would be impractical to attempt this kind of data search on site;

b. Searching computer systems for criminal evidence is a highly technical process that requires expert skills and a properly controlled environment. The vast array of computer hardware and software available today requires even computer experts to specialize in specific systems and applications. It is difficult to know prior to a search which expert should analyze the system and its data. The search of a computer system can be equated to a scientific procedure, which is designed to protect the integrity of the evidence while recovering

hidden, erased, compressed, password-protected, and other encrypted files. Because computer evidence is extremely vulnerable to tampering and destruction, both from external sources and from code embedded in the system as a "booby-trap," the controlled environment of a laboratory is essential to its complete and accurate analysis.

c.     In order to fully retrieve data from a computer system, an analyst needs all storage devices, as well as the central processing unit (CPU). The analyst needs all assisting software (e.g., operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data, as well as all related instructional manuals, documentation and security devices;

d.     Searching computerized information for evidence or instrumentalities of a crime often requires the seizure of the entire computer's input/output periphery devices, including related documentation, passwords and security devices, so that a qualified examiner can accurately retrieve the system's data in a controlled environment;

e.     Peripheral devices, which allow users to enter and retrieve data from stored devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system; therefore, it is important that the analyst be able to properly retrieve the evidence sought.

17.     The Department of Energy, Office of Inspector General will conduct onsite previews of computers in order to focus and seize only devices used by Andrew Worrall ("**SUBJECT PERSON**"). This process assists investigators with only seizing and examining items associated with the criminal activity. Based on experience, cooperation from occupants of the residence being searched assists investigators with identifying and seizing only devices that could potentially contain contraband. It is important to note that systems currently powered off

9

will not be powered on to conduct a preview unless investigators believe turning on the device will not alter or destroy possible evidence.

18.     The facts set forth in this affidavit establish probable cause to believe that a computer (including tablets and smartphones), its storage devices, and other system components were used as a means of committing offenses involving the sexual exploitation of minors, in addition to storing evidence of said crime.   Accordingly, I seek the authorization to seize and search any computers and related electronic devices located in the possession of the **SUBJECT PERSON,** consistent with **Attachment B** to the requested warrant.

## INVESTIGATION

19.     On July 18, 2025, Assistant Special Agent-in-Charge (ASAC) Aaron Neff, DOE-OIG, Office of Investigations (OI) provided SA Joshua Nicholson, DOE-OIG, with a .pdf document titled "Worrell152407.pdf", wherein Ava Newsome sent an email and several screenshots of a text conversation between herself and **SUBJECT PERSON** to the Employee Concerns email (employeeconcerns@ornl.gov) at ORNL.  In the email, Newsome stated she and **SUBJECT PERSON** first started talking on Snapchat where Newsome stated **SUBJECT PERSON** knew she gave her age as 16 years old.  According to Newsome, **SUBJECT PERSON** asked if she was younger because he thought that was "hot." From there, they moved to Telegram and continued their discussion.

20.     A review of the screenshot text messages showed the contact name "Wozza," with a phone number listed as (865) 313-0177.  A search of the One ID Phonebook, which lists contact information for Department of Energy Employees for phone number (865) 313-0177 identified it as contact information for Andrew Worrall, worralla@ornl.gov, (**SUBJECT**

10

**PERSON),** who is employed at the Office of Science, at the Oak Ridge National Laboratory.

21.     A review of the screenshot text messages shows multiple images of a white male, which matches images provided by ORNL of **SUBJECT PERSON**'s employee ID photograph, and images from **SUBJECT PERSON**'s Tennessee driver's license.   A review of property records indicated **SUBJECT PERSON**'s address as 12509 Daisy Field Lane, Farragut, Tennessee 37934.

22.     A review of the screenshot text messages revealed the following dialogue between **SUBJECT PERSON** and Ava Newsome:

| | |
|---|---|
| -Newsome: | You really don't care that I'm 16? |
| -Worrall: | I love that you are |
| -Worrall: | This is like a dream come true for me |
| -Newsome: | Your 51? correct |
| -Worrall: | Yep, that ok? |
| -Newsome: | I like older but not too much and yes it's perfect |
| -Worrall: | Show me what you look like baby, I'm so horny for you |
| -Newsome: | Have you been with younger before |
| -Worrall: | Not as young as you, dated 18 and 19 year old |
| -Newsome: | Oh wow, what do you do for work |
| -Worrall: | I manage science and engineering projects |
| -Newsome: | Would you ever want to meet? Wait where are you from again? |
| -Worrall: | I'm from England.  But I now live in TN.  You? I'd love to meet though yeah |
| -Newsome: | I'm in Michigan |
| -Newsome: | What would you want to do when we meet? |
| -Worrall: | Ooh great questions.  I'd love to hugh you first, big long hug.  Kiss you on the head.  Say what a good girl you are hehe.  Take you for a fancy dinner, go shopping and get a cute dress for you, I love photography so I'd love to take lots of pics of you |

11

| -Newsome: | we'd have to hangout in secrete |
|---|---|
| -Worrall: | Yeah, for sure, in my hotel room? |
| -Newsome: | Possibly! Would you come to me? |
| -Worrall: | It's easier for me to come to you, right? |
| -Worrall: | Would you be able to sleep over or no? |
| -Newsome: | Yeah I would just say I'm going to my friends house and then you could pick me up from there, and then you'd just have to take me back there so my mom doesn't know |
| -Worrall: | Love it, so tell me… do you want me to be a gentle daddy or a dominating daddy? |
| -Newsome: | it depends what you want I like to be submissive |
| -Worrall: | Good. Yeah I like to take control. Lead. Dominate totally |

23.     On July 23, 2025, SA Nicholson and I conducted a telephonic interview of Newsome, who stated she began interacting with **SUBJECT PERSON** when he added her on Snapchat in early July 2025.  Newsome stated she told **SUBJECT PERSON** she was 18 years old, but she stated **SUBJECT PERSON** did not believe her and insisted she was 16 years old, which she initially denied, but gradually lied and told **SUBJECT PERSON** she was 16 years old.  After initiating the chat on Snapchat, Newsome suggested they switch to Telegram, which they did.  During an in-person interview, agents verified Newsome was 18 years of age and verified the Snapchat user account **SUBJECT PERSON** was using as 'anon_me2025'.

24.     Review of the Snapchat records for user account 'anon_me2025' identified that the account contained communications of a sexual nature between many users who stated they had not achieved the age of 18.  The following are excerpts of those such communications:

25.     User 'Raluka62442' stated she was 17 years old.  'Anon_2025' sent an audio message saying, "good girl, you want to show daddy your beautiful little titties".  'Raluka62442'

12

then sent a topless image. The conversation continued and 'Raluka62442' sent several sexually explicit videos of herself. 'Anon_2025' asked her to "slide a finger in her beautiful wet pussy," to which she replied that she can't because she has long nails. 'Anon_2025' then prompted her to use an object, which 'Raluka62442' responded to by sending a video of her placing a hairbrush handle in and out of her vagina.

26.    User 'l50883517' and 'Anon_2025," from July 7, 2025, and July 8 2025: 'l50883517' initially stated that she's 18, but later stated she would be 18 in 6 months, which would make her 17. Based upon 'Anon_2025's' prompting, she sent clothed images and a live video saying she's real and that she is from Charleston. 'Anon_2025' then said he wanted to see a video of her breasts, and she told him he's got to pay. He asked for her Cash App and sent her an unknown amount of money. She then sent him a video exposing her breasts. He then asked to "Show me how you play with your pussy baby. Make daddy cum for you." She then sent images and videos of her putting her fingers in her vagina, and her face appears in the video. She then said she would give him stuff for free if he helps her figure out what to do, what to film, and how. He then offered pointers and helped when it came to how to dress, how to act, and what to film. He sent her a script for a video:

> Here's a script for the bathroom: camera on sink pointing towards bath/shower. You undress out of tennis clothes as though just got home. Undress in front of camera. Look at yourself in mirror. Admire your body. Start shower. Bend over picking things up so can see your ass. Get in shower. Just wash your body. As you rub tits, pussy, ass, touch each part more erotically as though getting turned on. If the shower head comes off, use it on your clit with foot up so can see your pussy and jet on your clit. If you have a toy, fuck yourself in shower

13

*or use shower gel bottle.*

27.     During the chat, '150883517' provided her phone number, stated she was from Charleston, SC, and provided her Cash App moniker.   Based upon this information, DOE criminal intelligence personnel were able to locate an Instagram page for the user '150883517,' and was able to locate her full name, address and driver's license information that listed her birthday as January 12, 2008, which would make her 17 years old.  Based upon '150883517' sending live Snapchats, providing her phone number, and comparing that to other information she provided, the sexually explicit images and videos were provided by the actual person, a juvenile.

28.     During a chat conversation with user 'Kaylawentin3' in July, 'anon_2025' admitted to raping his 12- to 13-year-old niece:

| | |
|---|---|
| - anon_me2025: | When my niece was maybe 12 or 13 and I saw her little titties growing I knew I needed to see them and feel them |
| - anon_me2025: | So on a weekend I would wake up early so I was the one to go wake her up. I'd make an excuse why. Like "she's so lazy. Let me go and wake her up" |
| - anon_me2025: | I would sneak into her room and kneel. And slide my hands under the bed covers |
| - anon_me2025: | I would always find her night shirt up around her neck exposing her tiny little growing nubbins |
| - anon_me2025: | I would pretend I was waking her up. But I would feel her little titties. Rub her nipples |
| - anon_me2025: | She never stopped me. She just used to moan a little and giggle |
| - kaylawentin3: | That's SO HOT |
| - kaylawentin3: | I am so turned on reading that |
| - kaylawentin3: | Daddy should've played with her pussy too |

14

| - kaylawentin3: | I knew there was a reason you liked my small tits and puffy nipples hehe |
| - anon_me2025: | There's more |
| - anon_me2025: | When she was maybe 13 I saw her in the shower. And she didn't close the door |
| - anon_me2025: | So later that day we started play fighting and wrestling |
| - anon_me2025: | I carried her into the bedroom and through her on the bed |
| - anon_me2025: | She looked straight at me and I knew she wanted more |
| - anon_me2025: | I climbed on top of her and held her down |
| - anon_me2025: | And she started grinding on my thick cock |
| - anon_me2025: | She started breathing harder and deeper and faster |
| - anon_me2025: | Is started thrusting and kissed her neck. She came right there |

29.     He further stated that he was able to "hack" her phone and that he currently has a "huge stash of nudes of her." He stated he's never told anyone before but felt confident in confiding this information in 'kaylawnetin3':

| - kaylawentin3: | How old is she now? Daddy needs to fill her. |
| - kaylawentin3: | I'm really turned on by your story |
| - kaylawentin3: | I don't know many men with stories like that and they make me sooooooo fucking sloppy |
| - anon_me2025: | She's nearly 30 now |
| - anon_me2025: | I even managed to hack he phone when she was younger so I have a huge stash of nudes of her as she grew up. Mid to late teen years |
| - anon_me2025: | I also set an ipad up when she stayed with me years ago so I could watch her |
| - kaylawentin3: | Wow |
| - anon_me2025: | She has big titties now lol |
| - kaylawentin3: | That's so hot I cannot believe it |
| - anon_me2025: | I like to think my massaging helped them grow 🤣 |

15

| - kaylawentin3: | Anything hot happen when you watched her? |
| - anon_me2025: | I've never shared that with anyone before |
| - anon_me2025: | Nobody would understand or appreciate it |
| - anon_me2025: | But thought you would of all people 😈 ❤️ |
| - anon_me2025: | Nothing too much. Other than applying lotion |
| - anon_me2025: | And her checking herself out in the mirror |
| - anon_me2025: | One hot photo I like is her covered in cum from her first boyfriend 😊 |

30.     On July 14, 2025, **SUBJECT PERSON**'s ex-spouse, Louise Evans, emailed personnel at ORNL regarding the initial allegation Newsome made regarding **SUBJECT PERSON**'s activities online with someone he thought to be 16 years old. Newsome provided copies of the screenshots to Evans as well. In her email, Evans provided the following information that is relevant to this investigation:

31.     She provided that she and **SUBJECT PERSON** were married from December 2013 until February 2020. Evans stated one of the reasons for leaving the marriage was because:

> *Andy Worrall had what I interpreted (through both observation of physical behaviors such as the way he looked at and hugged her, reading text message exchanges, and gut feeling of what was going on) to be an unusual obsession with his young niece, Jessica Burgess, who was ~16 years-old up to ~21 years-old over the course of our marriage. In summary, Andy would text her frequently and sometimes multiple times a day. He would send her selfies of himself and make requests asking that she send him pictures of herself. Some of the message content appears to lean sexual in nature from my interpretation of it and is inappropriate from my perspective of communications between an uncle and his niece. There are other examples of obsessive behaviors around this relationship I could speak to, if needed. For example, when we stayed with UK family, he would occasionally come to bed late because he was "saying*

16

*goodnight" to his niece Jessica. When confronted on several occasions by me*
*that this was inappropriate towards her, he would tell me I was incorrect in my*
*interpretation, and he was being a father figure to her."*

32. Of note, during his conversation with user 'kaylawentin3,' he references his niece being 30 years old now. This matches the description of age provided by his ex-spouse. +

33. On August 12, 2025, I obtained and executed a federal search warrant from this Court authorizing the search of information associated with the Snapchat account 'anon_me2025,' attached as reference.

34. Subscriber records obtained during the execution of this search warrant identified that the 'anon_me2025' Snapchat account was accessed from several IP addresses, including 69.131.208.239 on January 19, 2025, at 20:22:29 UTC; and July 9, 2025, at 22:14:20 UTC.

35. IP address 69.131.208.239 is assigned to TDS Broadband Service. TDS Broadband Service subscriber information identified on September 18, 2025 revealed that the IP address 69.131.208.239 was issued to Andrew Worrall, and the current session for the IP address started on December 1, 2024, and was still in session as of September 12, 2025. The address listed for the account was 12509 Daisy Lane, Farragut TN, 37934.

## USE OF PHYSICAL BIOMETRIC CHARACTERISTICS

36. The requested warrant would permit law enforcement to obtain from the **SUBJECT PERSON** the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

   a. From my training and experience, as well as from information found in publicly available materials published by device manufacturers, I know that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through

17

biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

b. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c. If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

d. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are a more secure way to protect a device's contents. This is particularly true when the users of a device

18

are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

e.   As discussed in this affidavit, based on my training and experience your affiant believes that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.   Also from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, I know that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, is inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked, or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.   Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the requested warrant would permit law enforcement personnel to: (1) press or swipe the fingers (including thumbs) of the **SUBJECT PERSON,** who is reasonably believed by law enforcement to be a user of the device, to the fingerprint scanner of the device; and (2) hold the

19

Case 2:25-mj-01290-DUTY *SEALED* Document 1 *SEALED* Filed 06/04/25 Page 25
of 52   Page ID #: 28

device in front of the face of the same individual and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## THE DISTRIBUTION/RECEIPT/POSSESSION OF CHILD PORNOGRAPHY

37. Based on training and experience, I know individuals involved in the distribution, receipt and possession of child pornography often store pornographic images and videos for their personal review. These explicit images are capable of being stored on digital devices. Additionally, individuals who possess child pornography often keep pornographic images for distribution; particularly to trade with other individuals involved in the exploitation of children. In the modern age, this trading is often done via the Internet, and through mobile applications. I believe additional digital devices found on the **SUBJECT PERSON** may contain images and/or videos of child pornography.

## INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN AND POSSESS, RECEIVE AND/OR DISTRIBUTE CHILD PORNOGRAPHY

38. Based on my previous training and experience related to investigations involving child pornography and the sexual abuse of children, I have learned that individuals who possess, receive, distribute or access with intent to view child pornography have a sexual interest in children and in images of children. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

    a. The majority of individuals who commit child pornography offenses are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

20

b.　　　The majority of individuals who commit child pornography seek out, acquire, possess and may collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also do so with child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children. Non-pornographic, seemingly innocuous images of minors are often found on media containing child pornography. Such images are useful in attempting to identify actual minors depicted in child pornography images found during the execution of a search warrant. In certain cases, such images may also assist in determining the origins of a particular child pornography image or series of images.

c.　　　The majority of individuals who commit child pornography offenses rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. They often maintain their child pornography materials in a digital or electronic format in a safe, secure, and private environment, including in cloud-based storage online or on their person.

d.　　　The majority of individuals who commit child pornography offenses often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, e-mail, e-mail groups, bulletin boards, newsgroups, instant messaging, and other similar vehicles.

21

39.     The majority of individuals who commit child pornography offenses often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

## CONCLUSION

37.     Based on the information set forth in this affidavit, there is probable cause to believe that contraband, evidence, fruits, and instrumentalities of, and property designed for use in committing violations of 18 U.S.C.§ 2252A(a)(2), Distribution/Receipt of Child Pornography; 18 U.S.C. § 2252A(5)(B), Possession of, or Knowingly Accessing with the Intent to View Child Pornography; and 18 U.S.C. § 2422, Coercion and Enticement, are presently located on the **SUBJECT PERSON,** bags, and containers within the immediate possession of **SUBJECT PERSON** as described in **Attachment A**, and the digital media therein.  Accordingly, I respectfully request that this Court authorize the search of **SUBJECT PERSON** so that agents may seize and search the items listed in **Attachment B**.

FURTHER AFFIANT SAYETH NOT,

PAUL BRADFORD GILBRIDE
Special Agent
Department of Energy

Subscribed and sworn to before me on the 1st day of October 2025.

HON. DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF PERSON AND ELECTRONICS TO BE SEARCHED

The person of Andrew Worrall, SUBJECT PERSON, (date of birth: October 13, 1969; Social Security Number 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), and any bags and/or other containers belonging to Worrall and within his immediate possession, when Worrall is present within the Eastern District of Tennessee, for cellular telephones and electronic devices, to seize the devices found during the authorized search of Worrall and, thereafter, to search those cellular telephones and electronic devices for the records and information described in **Attachment B**.

# ATTACHMENT B

## ITEMS TO BE SEIZED

1.     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the receipt or storage of the same, including but not limited to:

        a.     any computer, computer system, storage media and related peripherals; any electronic and/or digital data storage devices, including but not limited to, hardware, software, flash memory devices, cellular telephones, tablets, and other storage mediums.

2.     Information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, including, but not limited to:

        a.     electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256; and,

        b     records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. §2256;

3. For any computer or storage medium to include cell phones whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant, evidence of who used, owned, or controlled the computer or storage medium at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; for the purpose of determining ownership and/or control other said items.

4. In order to search for the items described above that may be maintained in electronic media, law enforcement personnel seek authorization to search, copy image and seize the following items for off-site review:

    a. Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

    b. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including encryption devices;

    c. Any magnetic, electronic or optical storage device capable of storing data, such hard disks, smart cards, electronic notebooks, and personal digital assistants;

    d. Any documentation, operating logs and reference manuals regarding the operation of the computer equipment;

    e. Any applications, utility programs, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f. Any encryption devices, dongles, and similar physical items necessary to gain access to the computer equipment, storage devices or data, but this warrant does not authorize the compulsion of any person to provide a password or code to access the same; and

g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data, but this warrant does not authorize the compulsion of any person to provide a password or code to access the same; and

h. Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, and router configuration software.

5. Any and all cameras, film, or other photographic equipment;

6. Records, in whatever form, of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes, books, diaries, and documents regarding purchase or repair;

7. Records, in whatever form, pertaining to accounts held with Internet Service Providers or of Internet use; and

8. Deeds, titles, bills, invoices, and other indicators of ownership or occupancy of desktop computers, laptop computers, tablets, and other similar devices; documents reflecting names, addresses, and telephone numbers; bank records.

9. Electronic mail, chat logs, and electronic messages, establishing communication with individuals who have not attained the age of 18 or wherein the suspect believes the individual has not attained the age of 18. Wherein the correspondence persuades, induces,

entices or coerces any individual who has not attained the age of 18 years to engage in sexual activity.

10. All visual depictions, including still images, videos, films, audio recordings, or other recordings of communications with individuals who have not attained the age of 18 or wherein the suspect believes the individual has not attained the age of 18.

11. For any computer or storage medium to include cell phones whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant, evidence of who used, owned, or controlled the computer or storage medium at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence; for the purpose of determining ownership and/or control other said items.



**FILED**

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Tennessee

AUG 12 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 3:25-MJ-__1223__ |
| INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT ANON_ME2025 THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. LOCATED AT 2772 DONALD DOUGLAS LOOP NORTH, SANTA MONICA, CALIFORNIA 90405, MORE FULLY DESCRIBED IN ATTACHMENT A | ) ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached hereto and incorporated herein.

located in the _____Eastern_____ District of _____Tennessee_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2242(B) | Enticement and Coercion |

The application is based on these facts:

Please see the affidavit of DOE-OIG SA Paul B. Gilbride, which is attached hereto and incorporated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Paul B. Gilbride, DOE-OIG Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____08/12/2025____

_____
*Judge's signature*

City and state: Knoxville, Tennessee

Hon. Debra C. Poplin, United States Magistrate Judge
*Printed name and title*

Case 3:25-mj-01223-DCP *SEALED* Document 5 *SEALED* Filed 08/12/25 Page 1 of
Case 3:25-mj-01292-DCP Document 1-1 Filed 10/03/25 Page 35 of 52 PageID
#: 45

## ATTACHMENT A

### Property to Be Searched

Based on all the foregoing information, I believe that evidence of the above-listed crime(s) exists at the above-described business records at the described location, and that there is probable cause to search those records associated with the user account **anon_me2025**.

Case 3:25-mj-01223-DCP *SEALED*    Document 5 *SEALED*    Filed 08/12/25    Page 2 of
Case 3:25-mj-01292-DCP    Document 1-1   Filed 10/03/25    Page 36 of 52    PageID
#: 46

# ATTACHMENT B

## Particular Things to be Seized

Pursuant to 18 U.S.C. § 2703, PROVIDER as described in **Attachment A** is hereby ordered as follows:

A.    Basic subscriber information for the Snapchat account associated with the above listed accounts consisting of the email address, phone number, friends list, account creation date, and timestamps and IP address for account logins/logouts.
And for the date range beginning July 1, 2025 to Present:

B.    Logs, including sender, recipient, date, and time, concerning the previous Snaps sent to or from the above listed account.

C.    All stored content associated with the above-listed account, including but not limited to; all pictures and videos, all stored Snaps, Stories, Memories, and chat content. All meta-data associated with user created content. All files provided in response to this search warrant shall be provided in an unencrypted format.

D.    All stored location information associated with the above listed account, including but not limited to all geographic locations obtained through GPS, Bluetooth, WIFI signals, or any other means.

E.    All available connection information for devices used to access the above-listed account, including but not limited to, the name of mobile operator or ISP, browser type, language and time zone, mobile phone number and IP address(es), including all available port number information.

Case 3:25-mj-01223-DCP *SEALED*    Document 5 *SEALED*    Filed 08/12/25    Page 3 of
Case 3:25-mj-01292-DCP    Document 1    Filed 10/03/25    Page 37 of 52    PageID
#: 47

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT **ANON_ME2025** THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. LOCATED AT 2772 DONALD DOUGLAS LOOP NORTH, SANTA MONICA, CALIFORNIA 90405 | CASE NO.  3:25-MJ-**1223**<br><br>**FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH

I, Paul B. Gilbride, being duly sworn, state the following information to be true to the best of my knowledge, information and belief:

### INTRODUCTION

1.     This affidavit is being offered in support of an application for a search warrant for information associated with SnapChat account **ANON_ME2025** (hereinafter referred to as "**SUBJECT ACCOUNT**"), which is stored at premises owned, maintained, controlled, or operated by Snap, Inc. (hereinafter referred to as "Snap"), a social networking company headquartered at 2772 Donald Douglas Loop North, Santa Monica, CA 90405. The information to be searched is described in the following paragraphs and in **Attachment A**.

2.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), to require Snap to disclose to the Government records and other information in its possession, pertaining to the subscribers or customers associated with the **SUBJECT ACCOUNT**.  The Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18

1

U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States…that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## **AGENT BACKGROUND AND EXPERIENCE**

3.     Your affiant is a Special Agent (SA) with the U.S. Department of Energy, Office of Inspector General (DOE-OIG), and have been so employed since 2013.  As a Special Agent with the DOE-OIG, your affiant is assigned as a task force member with Internet Crimes Against Children (ICAC).  As part of this assignment, your affiant has investigated criminal violations relating to enticement, child exploitation, and child pornography.  Your affiant is also assigned to the DOE-OIG Cyber Investigations and Forensics Analysis section, where your affiant has investigated and/or participated in investigations of network intrusions, intellectual property theft, mishandling of classified data, threats affecting interstate commerce, child exploitation and child pornography offenses, which included surveillance, executing search warrants, and reviewing digital evidence containing numerous examples of child pornography

4.     Between 2008 and 2013, your affiant was a Special Agent with the United States Secret Service.  Your affiant holds a Bachelor of Science degree in Information Technology and a Master of Science in Telecommunications from George Mason University in Fairfax, Virginia.   During your affiant's law enforcement career, your affiant has investigated financial fraud, network intrusions, child pornography, extortion, threats against protected persons, counterfeit currency, credit card fraud and other electronic crimes.

5.     Your affiant has completed the following training:

- The Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC);

2

Case 3:25-mj-01223-DCP *SEALED*    Document 5 *SEALED*    Filed 08/12/25    Page 5 of
Case 3:25-mj-01292-DCP    Document 1    Filed 10/03/25    Page 39 of 52    PageID
#: 49

- The United States Secret Service Special Agent Training Course (SATC), where your affiant received specialized training concerning the execution of search warrants involving digital media and the proper handling of evidence;

- The Department of Homeland Security, Basic Computer Evidence Recovery Training Program (BCERT) and Advanced Computer Evidence Recovery Training Program (ACERT);

- Homeland Security Investigations (HSI) Victim Identification course; and

- Various additional training in the area of computer forensics, which included child pornography and child exploitation, and enticement.

6.     Your affiant has probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2242(B) are located within the **SUBJECT ACCOUNT** that is stored at premises controlled by Snap.

7.     The information contained within this affidavit is based upon information your affiant has gained from investigation, personal observations, training and experience, and/or information relayed to me by other law enforcement officers and/or agents.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known concerning the investigation.  Your affiant has set forth only the facts which are believed to be necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Section 2242(B), Coercion and Enticement, are presently located in the **SUBJECT ACCOUNT** described in **ATTACHMENT A**.

**APPLICABLE LAW**

8.     Title 18, United States Code, Section 2242(B) prohibits using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States to knowingly persuade, induce, entice, or coerce any individual

3

Case 3:25-mj-01223-DCP *SEALED*     Document 5 *SEALED*     Filed 08/12/25     Page 6 of
Case 3:25-mj-01292-DCP     Document 1    Filed 10/03/25     Page 40 of 52     PageID
#: 50

who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do.

## GLOSSARY OF TERMS APPLICABLE TO THIS AFFIDAVIT

9.      INTERNET SERVICE PROVIDER: A company that provides its customers with access to the Internet, usually over telephone lines or cable connections.  Typically, the customer pays a monthly fee, and the Internet Service Provider supplies software that enables the customer to connect to the Internet by a modem or similar device attached to or installed in a computer.

10.     THE INTERNET:  The Internet is a worldwide computer network that connects computers and allows communications and the transfer of data and information across county, state, and national boundaries.

11.     INTERNET PROTOCOL ADDRESS (IP Address): The unique numeric address of a machine or computer attached to and using the Internet.  This address is displayed in four blocks of numbers, as in 123.456.789.001, just for example.  Each numeric address can only be used by one computer or device over the Internet at a time.

12.     TELEGRAM: An end-to-end encrypted messaging application for smartphones which is commonly used to conceal communications between two parties

## BACKGROUND INFORMATION REGARDING SNAPCHAT

13.     Snapchat is a product offered by Snap, Inc. ("Snap"), a company headquartered in Santa Monica, California. Snapchat is a free access social networking application (or "app") that can be accessed at http://www.snapchat.com.  Snapchat is an application for sending and receiving "self-destructing" messages, pictures, and videos. These messages are commonly referred to as "snaps."

4

Case 3:25-mj-01223-DCP *SEALED*     Document 5 *SEALED*     Filed 08/12/25     Page 7 of
Case 3:25-mj-01292-DCP     Document 1   Filed 10/03/25     Page 41 of 52     PageID
#: 51

14.     A "snap" is a picture or video message taken and shared with other Snapchat users in real-time.  The sender of a snap has the option of setting a timer for how long their snap can be viewed.  Once a snap has been viewed it is deleted from Snap's system and is no longer visible to the recipient.

15.     Snapchat users can also send text messages to others using Snapchat's "Chat" feature.  Once a user leaves the Chat screen within the application, messages viewed by both the sender and the receiver will exist for only a predetermined amount of time.  Then the Snap system deletes the messages.  Snapchat further notifies other users when a user is online and users can begin messaging each other.  In addition, Snapchat users can send pictures to other users by utilizing the camera on their device.  Pictures can also be sent from an archive of saved pictures in the photo gallery of the device.  Snapchat users compile contact lists of other users, with whom they can communicate.  In light of the foregoing, Snap constitutes a provider of an "electronic communication service" within the meaning of 18 U.S.C. § 3123. See 18 U.S.C. §§ 3127(1) and 2510(12).

16.     A Snapchat username is a unique identifier associated with a specific account on Snapchat and cannot be changed by the user.  On the other hand, a Snapchat vanity name is not a unique identifier and can be set and changed by a user or that user's friends to indicate how the user will appear within the app.  Unlike a username, a vanity name can contain special characters and symbols beyond hyphen, underscore, or period, as well as spaces, emojis, and capital letters.

17.     "Our Stories" is a collection of user submitted "snaps" from different locations and events.  A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.  For example, multiple different Snapchat users at a concert could all contribute to the same "Our Stories" collection by sharing their snaps, even if

Case 3:25-mj-01223-DCP *SEALED*     Document 5 *SEALED*     Filed 08/12/25     Page 8 of
Case 3:25-mj-01292-DCP     Document 1   Page ID Filed 10/03/25     Page 42 of 52     PageID
#: 52

they do not know each other. Users can also view "Our Stories" events if they are not actually present at the event by subscribing to the story.

18.     A Snapchat user can keep a public photo/video diary using the "My Story" feature. Each snap in a user's "My Story" documents the user's experience. Based on the user's privacy settings, the photos and videos added to "My Story" can be viewed either by everyone on Snapchat or just the user's friends. Stories are visible to other users for up to 24 hours.

19.     Snapchat has a "Group Stories" feature allowing multiple users to contribute photos and videos to the same "Story", a collection of posts that stay viewable for a limited amount of time. Snapchat users have the ability to name their group story and invite other users by username to add content to the group story. The group stories will disappear if 24 hours pass without a user adding a new photo or video.

20.     Snapchat "Memories" is a cloud-storage service hosted by Snapchat. Snapchat users can save their sent or unsent snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

21.     In addition to photos, videos, "snaps" and stories, "Snapcash" is an online money transfer service offered by Snapchat. The actual business platform is run by Square, Inc., the distributor of a mobile credit card reader and application. Snapcash can be used to transfer money between Snapchat users using a linked, U.S. issued Visa or MasterCard debit card only; using credit cards is not permitted. Snapcash can only be sent to other users who have a linked debit card. Snapcash has a $250 weekly limit but can be upgraded to a $2,500 weekly limit. Users who upgrade have to provide their full name, date of birth, and Social Security number.

6

Case 3:25-mj-01223-DCP *SEALED*     Document 5 *SEALED*     Filed 08/12/25     Page 9 of
Case 3:25-mj-01292-DCP     Document 1     Filed 10/03/25     Page 43 of 52     PageID
#: 53

22.     While a Snapchat message or "snap" may disappear, the record of who sent it and when still exists.  Snapchat records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies.  This includes the date, time, sender, and recipient of a snap or message.  Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

23.     Snapchat asks users to provide basic contact and personal identifying information to include date of birth.  When a user creates an account, they make a unique Snapchat username. This is the name visible to other Snapchat users.  An email address is required to register a Snapchat account and a new user must also provide a mobile phone number.  This phone number is verified during the registration process.  Snapchat sends an activation code which must be entered before proceeding with the registration step.  However, a user may elect to bypass entering a phone number so one may not always be present in the user's account.  Snapchat also retains the account creation date.

24.     Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service.  They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

25.     In some cases, users of social networking applications will communicate directly

7

with the application about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Application providers typically retain records about such communications, including records of contacts between the user and the providers support services, as well as records of any actions taken by the provider or user as a result of the communications. In addition, application providers often have records of the IP addresses used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help identify which computers or other devices were used to access the account and their geographic location.

26. In my training and experience, evidence of who was using an application account may be found in address books, contact or buddy lists, email addresses in the account, and attachments to electronic messages, including pictures and files.

## **PROBABLE CAUSE**

27. This affidavit is submitted in support of the issuance of a warrant authorizing the search of **SUBJECT ACCOUNT** described in **ATTACHMENT A**, along with the digital media found there, in order to locate and seize items described in **ATTACHMENT B**.

28. On July 18, 2025, Assistant Special Agent-in-Charge (ASAC) Aaron Neff, DOE-OIG, Office of Investigations (OI) provided SA Joshua Nicholson, DOE-OIG, with a .pdf document titled "Worrell152407.pdf," wherein Ava Newsome (hereinafter "NEWSOME") had sent an email and several screenshots of a text conversation between herself and Andrew Worrall (hereinafter "WORRALL") to the Employee Concerns email address (employeeconcerns@ornl.gov) at the Oak Ridge National Laboratory (ORNL). In this email, NEWSOME stated she and WORRALL first started talking on Snapchat where NEWSOME

8

stated WORRALL knew she her age to be 16 years old. NEWSOME provided a screenshot of a portion of the Snapchat messages between herself and WORRALL:

> WORRALL: Ok hang on…18, 16
> So you are 2 years less than what you first told me

> NEWSOME: mhm

> WORRALL: Sure only 2? Maybe 3?

*(agent's comment: It appears he was insinuating she was 15)*

> NEWSOME: haha no

> WORRALL: Ok. Lol. I really don't mind. It's not. Hot

*(agent's comment: It appears he corrected the word "not" to the word "hot")*

> NEWSOME: okay! Do you have telegram?

> WORRALL: I do yeah. You prefer playing on there? Want to add me?
> I'd love to get you all to myself and play. You are stunning
> and young. I'd love to hear more.

*At that point, NEWSOME provided her Telegram handle.*

> WORRALL: Want to play now? Add me. Wozza_uk

29. A review of the screenshots appeared to contain a picture of WORRALL, which was verified by comparing it to his driver's license picture. At this point, NEWSOME and WORRALL switched over to the application Telegram, which was verified by NEWSOME during her interview, and as shown in Telegram messages.

30. A review of the screenshot Telegram messages showed the contact name "Wozza," with an associated phone number listed as +1 865-313-0177. A search of the OneID Phonebook, which lists contact information for Department of Energy Employees, for phone number 865-313-0177 identified it as contact information for WORRALL, worralla@ornl.gov, who is employed at the Office of Science, at ORNL.

9

31.     A review of the screenshot text messages showed multiple images of a white male, which matched images provided by ORNL of WORRALL's employee ID photograph, and images from WORRALL's Tennessee driver's license. A review of property records indicated WORRALL's address as 12509 Daisy Field Lane, Farragut, TN 37934, which is located in the Eastern District of Tennessee.

32.     A review of the screenshot Telegram messages revealed the following dialogue between WORRALL and NEWSOME:

NEWSOME:     You really don't care that I'm 16?

WORRALL:     I love that you are
This is like a dream come true for me

NEWSOME:     Your 51? correct

WORRALL:     Yep, that ok?

NEWSOME:     I like older but not too much and yes it's perfect

WORRALL:     Show me what you look like baby, I'm so horny for you

NEWSOME:     Have you been with younger before

WORRALL:     Not as young as you, dated 18 and 19 year old

NEWSOME:     Oh wow, what do you do for work

WORRALL:     I manage science and engineering projects

NEWSOME:     Would you ever want to meet? Wait where are you from again?

WORRALL:     I'm from England. But I now live in TN. You? I'd love to meet though yeah

NEWSOME:     I'm in Michigan
What would you want to do when we meet?

WORRALL:     Ooh great questions. I'd love to hugh you first, big long hug. Kiss you on the head. Say what a good girl you are hehe. Take you for

10

> a fancy dinner, go shopping and get a cute dress for you, I love photography so
> I'd love to take lots of pics of you

NEWSOME: we'd have to hangout in secrete

WORRALL: Yeah, for sure, in my hotel room?

NEWSOME: Possibly! Would you come to me?

WORRALL: It's easier for me to come to you, right?

WORRALL: Would you be able to sleep over or no?

NEWSOME: Yeah I would just say I'm going to my friends house and then you
could pick me up from there, and then you'd just have to take me
back there so my mom doesn't know

WORRALL: Love it, so tell me... do you want me to be a gentle daddy or a
dominating daddy?

NEWSOME: it depends what you want I like to be submissive

WORRALL: Good. Yeah I like to take control. Lead. Dominate totally

1.    On July 23, 2025, your affiant and SA Nicholson, DOE OIG, conducted a
telephonic interview of NEWSOME, who stated she began interacting with WORRALL when he
added her on Snapchat in early July 2025. NEWSOME stated she told WORRALL she was 18
years old, but she stated WORRALL did not believe her and insisted she was 16 years old, which
she initially denied, but eventually told WORRALL she was 16 years old. After initiating the
chat on Snapchat, NEWSOME suggested they switch to Telegram, which they did. NEWSOME
verified she participated in the above-mentioned chat. During an in-person interview, agents
verified NEWSOME as being 18 years of age through review of her Michigan driver's license.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

2.    Your affiant anticipates executing this warrant under the Electronic
Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

11

Case 3:25-mj-01223-DCP *SEALED*    Document 5 *SEALED*    Filed 08/12/25    Page 14
Case 3:25-mj-01292-DCP    Document 1-1 Page ID Filed: 10/03/25    Page 48 of 52    PageID
#: 58

2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in **Attachment B**, as they pertain to the **SUBJECT ACCOUNT** as described in **Attachment A**. Upon receipt of the information described in **Attachment B**, government-authorized persons will review that information to locate the items described in **Attachment B**.

3. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Your affiant therefore requests authority for the warrant to be executed at any time of the day or night.

## CONCLUSION

4. Based upon the foregoing, there is probable cause to believe that the information requested from Snap will contain evidence, fruits, and instrumentalities of the commission of a criminal offense, in violation of Title 18, United States Code18 U.S.C. § 2422 (B) – Coercion and Enticement.

5. Therefore, your affiant respectfully requests that the attached search and seizure warrant be issued authorizing the search and seizure of the SUBJECT ACCOUNT described in **Attachment A**.

12

6.    Because Snap can provide the data responsive to this search and seizure warrant at any time, and investigators will search them in accordance with **Attachment B**, your affiant requests permission to conduct the searches at any time of the day or night.

FURTHER AFFIANT SAYETH NAUGHT.


Paul B. Gilbride
Special Agent
U.S. Department of Energy
Office of Inspector General



Sworn and subscribed before me this the 12th day of August 2025


HON. DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

13

## <u>ATTACHMENT A</u>

### Property to Be Searched

Based on all the foregoing information, I believe that evidence of the above-listed crime(s) exists at the above-described business records at the described location, and that there is probable cause to search those records associated with the user account **anon_me2025**.

## ATTACHMENT B

### Particular Things to be Seized

Pursuant to 18 U.S.C. § 2703, PROVIDER as described in **Attachment A** is hereby ordered as follows:

A.   Basic subscriber information for the Snapchat account associated with the above listed accounts consisting of the email address, phone number, friends list, account creation date, and timestamps and IP address for account logins/logouts.
And for the date range beginning July 1, 2025 to Present:

B.   Logs, including sender, recipient, date, and time, concerning the previous Snaps sent to or from the above listed account.

C.   All stored content associated with the above-listed account, including but not limited to; all pictures and videos, all stored Snaps, Stories, Memories, and chat content. All meta-data associated with user created content. All files provided in response to this search warrant shall be provided in an unencrypted format.

D.   All stored location information associated with the above listed account, including but not limited to all geographic locations obtained through GPS, Bluetooth, WIFI signals, or any other means.

E.   All available connection information for devices used to access the above-listed account, including but not limited to, the name of mobile operator or ISP, browser type, language and time zone, mobile phone number and IP address(es), including all available port number information.